IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL S. WILSON, # R06115,  )<br>  )<br>              Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>DONALD GAETZ,  )<br>EARL WILSON, and S. A. GODINEZ,  )<br>  )<br>             Defendants.  ) | Case No. 14-cv-00071-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Michael Wilson, an inmate who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this action pursuant to 42 U.S.C. § 1983 (Doc. 1) for the deprivation of his constitutional rights. Plaintiff claims that during his incarceration at Pinckneyville, Defendants Donald Gaetz (former warden), Earl Wilson (assistant warden), and S. A. Godinez (Illinois Department of Corrections ("IDOC") director) were responsible for denying him access to the courts, violating his due process rights, interfering with his mail, and denying him a single meal. Plaintiff seeks monetary damages and injunctive relief.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). After fully considering the allegations in Plaintiff's complaint, the Court finds that it fails to articulate any colorable claim and shall be dismissed.

**The Complaint**

According to the complaint, Plaintiff spent "months" trying to access Pinckneyville's law library in order to research several legal matters (Doc. 1, p. 5). These matters included a family law case, a felony case, and an out-of-state matter. When Plaintiff requested a library pass on March 7, 2012, his request was denied. Consequently, his family law case was "irrevocably harmed." The mother of Plaintiff's four-year-old child absconded with his child. The complaint

alleges that Pinckneyville's and IDOC's administrators were responsible for denying Plaintiff access to the courts by refusing this, and other, requests to visit the prison's law library.

Also according to the complaint, Pinckneyville's former warden, Defendant Gaetz, caused nearly two years of delays in Plaintiff's Minnesota criminal case (Doc. 1, p. 6). Plaintiff alleges that the Interstate Agreement and Detainers Act required Defendant Gaetz to notify the Minnesota court of Plaintiff's detention at Pinckneyville when Plaintiff transferred there in November 2011. Defendant Gaetz failed to do so. By the time Plaintiff identified the proper procedures to follow in his Minnesota criminal case in August 2012, Defendant Gaetz refused to cooperate in filing the necessary paperwork. The criminal case has now been pending for more than three years. Plaintiff blames Defendant Gaetz for causing nearly two years of delays immediately preceding the commencement of this action. The complaint identifies Defendant Gaetz, as well as Pinckneyville's and the IDOC's administration, as being responsible for unspecified constitutional deprivations associated with this delay.

The complaint also alleges that Plaintiff was unlawfully required to pay for a new prisoner identification card on October 31, 2012 (Doc. 1, p. 5). Typically, these cards are issued to inmates at no cost once a year. Plaintiff was charged $5.00. He alleges that Pinckneyville's and IDOC's administrators were responsible for this unlawful charge.

The complaint further alleges that Plaintiff was issued a disciplinary ticket for insolence and unauthorized movement on November 14, 2012 (Doc. 1, p. 5). At the time, he was allegedly following prison guidelines regarding "damage[d]/missing razors." The prison's adjustment committee found Plaintiff guilty of these rule violations without investigating the matter. As a result, Plaintiff was denied one month of time in the general inmate population and $10.00 of

3

state pay.  In addition to Pinckneyville's and IDOC's administrators, Plaintiff identifies several other "responsible" individuals but does not name them as defendants.

The complaint also alleges that Plaintiff was unlawfully denied lunch on December 23, 2012 (Doc. 1, p. 5).  Plaintiff became involved in an altercation with a correctional officer, based on what Plaintiff thought was a sexual remark that the officer made to him.  A prison lieutenant, who is not a defendant in this action, denied Plaintiff lunch that day as punishment.  In addition to Pinckneyville's and IDOC's administration, the complaint identifies the lieutenant as a "responsible" party.

Finally, the complaint alleges that Plaintiff's privileged mail was delivered to him unsealed on September 12, 2013 (Doc. 1, p. 6).  This was not the first time that Plaintiff received unsealed mail, although the complaint provides no details regarding prior incidents.  Plaintiff names Pinckneyville's and IDOC's administration as being responsible.

Plaintiff now sues Defendants Gaetz, Wilson, and Godinez for unspecified constitutional deprivations under 42 U.S.C. § 1983.  He asserts that "in all instances" these defendants were "ultimately responsible for final decision[s] at the local [and] state level" (Doc. 1, p. 6).  Plaintiff seeks $100,000.00 in compensatory damages and injunctive relief.

## DISCUSSION

After fully reviewing the allegations in the complaint, the Court finds it convenient to divide the complaint into four counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1:**  Access to courts claim against Defendants for irrevocably harming Plaintiff's ability to litigate family, felony, and out-of-state cases by denying law library access on March 7, 2012, and failing to notify Minnesota court of Plaintiff's detention at Pinckneyville.

4

Case 3:14-cv-00071-NJR-DGW   Document 6   Filed 02/18/14   Page 5 of 13   Page ID #94

**Count 2:** First Amendment mail interference claim against Defendants for delivering unsealed mail to Plaintiff on September 12, 2013, and at other unspecified times.

**Count 3:** Fourteenth Amendment due process claims against Defendants for issuing Plaintiff a false disciplinary ticket, failing to investigate the matter, and charging Plaintiff for his annual identification card.

**Count 4:** Eighth Amendment claim against Defendants for denying Plaintiff lunch on December 23, 2012.

**<u>Count 1 – Access to Courts</u>**

After carefully considering the allegations in the complaint, the Court finds that it fails to articulate a colorable access to courts claim (**Count 1**) against Defendants Gaetz, Wilson, or Godinez. The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn,* 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993).

In the complaint, Plaintiff asserts two separate access to courts claims. The first pertains to the denial of his March 7, 2012, request for a library pass. The second addresses delays that Defendant Gaetz allegedly caused to Plaintiff's Minnesota criminal case.

### A.     Denial of Law Library Access

According to the complaint, Plaintiff requested a library pass on March 7, 2012, in order to research and prepare a motion for a protective order in a family law matter (Doc. 1, p. 5). His request was denied on March 9, 2012. Consequently, the mother of Plaintiff's child absconded with his child. The complaint alleges that this, and other, denials of library passes hindered Plaintiff's ability to litigate a felony case and an out-of-state case. While some of these allegations might appear to satisfy the basic elements of an access to courts claim, they fall short.

The complaint does not identify who specifically caused this constitutional deprivation or how. It mentions two responsible groups, including: (1) Defendants Gaetz, Wilson, and Godinez; and (2) *all* of Pinckneyville's and IDOC's administrators. However, the complaint does not explain, even in basic terms, how each of these officials was actually involved in denying Plaintiff access to the courts. A review of Plaintiff's 72-page exhibit to the complaint reveals that Defendants Gaetz, Wilson, and/or Godinez merely concurred with the resolution of Plaintiff's grievances regarding law library access. This is not enough to state a claim against them, let alone all other Pinckneyville and IDOC officials.

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). As a result, the doctrine of *respondeat superior* does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692

(7th Cir. 2008). Defendants Gaetz, Wilson, and Godinez cannot be held liable for a violation of Plaintiff's constitutional rights merely because of their supervisory roles at Pinckneyville and/or IDOC or their roles in approving the denial of Plaintiff's grievance(s). *See Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene). Rather, the complaint must allege that each defendant personally participated in the violation.

Under some circumstances, the Seventh Circuit has held that "[s]upervisory liability will be found . . . if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). *See also Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002) (allegations that an agency's senior officials were personally responsible for creating the policies, practices and customs that caused the constitutional deprivations suffice to demonstrate personal involvement). Liability on this basis may arise where a prison policy or practice created by the supervisor results in a constitutional deprivation. However, no policy or practice attributable to Defendants Gaetz, Wilson, or Godinez is alleged or intimated here.

Based on the foregoing discussion, Plaintiff's access to courts claim arising from the denial of a library pass on March 7, 2012, shall be dismissed without prejudice.

**B.      Delay In Minnesota Criminal Case**

The complaint also alleges that Defendant Gaetz caused nearly two years of delays in Plaintiff's Minnesota criminal case, immediately preceding the filing of this action (Doc. 1, p. 5). The Seventh Circuit has made it clear that allegations of a delay, without more, are insufficient to

7

state a claim. Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). The allegations pertaining to the Minnesota criminal case are anything but specific. Although the complaint alleges that the case was delayed by Defendant Gaetz's actions for almost two years, it does not indicate what, if any, impact this delay had on Plaintiff's case. Having failed to demonstrate any sort of detriment, Plaintiff cannot proceed with this claim, even at this early stage.

Based on the foregoing discussion, **Count 1** shall be dismissed without prejudice.

### Count 2 – Mail Interference

The complaint also fails to articulate a colorable mail interference claim (**Count 2**). It merely alleges that Plaintiff received an unsealed privileged envelope on September 12, 2013 (Doc. 1, p. 6). There is no allegation that a particular defendant intentionally opened Plaintiff's mail, or how often. There is also no allegation that Plaintiff was harmed in any way. Without more, this claim also fails.

As the Seventh Circuit has explained:

> Inmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577, 94 S. Ct. 2963; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir.1993).

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005). However, the inadvertent or negligent opening of an occasional legal letter is not actionable. *See, e.g., Bryant v. Winston*,

750 F. Supp. 733 (E.D. Va. 1990).  Furthermore, "merely alleging an isolated delay or some other relatively short-term . . . disruption in the delivery of inmate reading materials will not support . . . a cause of action grounded upon the First Amendment."  *Rowe*, 196 F.3d at 782.  In light of this controlling law, the allegations in the complaint do not suggest that any constitutional violation occurred.  Accordingly, **Count 2** shall be dismissed with prejudice.

**Count 3 – Due Process Violations**

The complaint fails to state any due process claims (**Count 3**) against Defendants.  These claims arise from: (1) the issuance of a disciplinary ticket in connection with Plaintiff's disposal of a "damage[d]/missing razor;" (2) the adjustment committee's failure to investigate the matter before finding Plaintiff guilty of insolence and unauthorized movement; and (3) the issuance of a new prisoner identification card at a cost of $5.00 to Plaintiff (Doc. 1, p. 5).

A.     **False Disciplinary Ticket & Adjustment Committee Hearing**

According to the complaint, Plaintiff was wrongly issued a disciplinary ticket for insolence and unauthorized movement while properly disposing of a damaged razor (Doc. 1, p. 5).  However, where due process is afforded, allegations of false disciplinary reports do not state a claim.  *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984).  The Seventh Circuit Court of Appeals has reasoned that the due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses.  A hearing before a presumably impartial adjustment committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report.  *Hawkins v. O'Leary*, 729 F. Supp. 600, 602 (N.D. Ill. 1990), relying on *Hanrahan v. Lane*, supra, 747 F.2d at 1141.  The procedural requirements of a disciplinary hearing protect prisoners from arbitrary actions of prison officials.  *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987).

In this case, the complaint does not suggest that Plaintiff was deprived of a fair and impartial adjustment committee hearing. It merely alleges that the adjustment committee found Plaintiff guilty of the rule violations without an investigation (Doc. 1, p. 5). The exhibits reveal that the adjustment committee's decision was based on Plaintiff's "own partial admission of guilt," an admission that the allegations in Plaintiff's complaint do not contradict (Doc. 1-1, p. 26). Taken together, the allegations and exhibits raise no suggestion of a due process violation.

Further, the complaint does not indicate what role, if any, Defendants Gaetz, Wilson, or Godinez played in issuing a false disciplinary ticket. It sets forth no allegation that any of these three defendants actually issued the ticket. According to the exhibits, Defendant Gaetz approved the handling of Plaintiff's grievances on this issue (Doc. 1-1, p. 20). However, as explained above, this does not give rise to a claim against Defendant Gaetz, or, for that matter, Defendants Wilson and Godinez. *See Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (liability does not arise where director of state correctional agency becomes aware of a constitutional violation through the grievance procedure and fails to intervene). Under the circumstances, the complaint fails to state a due process claim based on the issuance of a false disciplinary ticket.

**B.     Charge for Identification Card**

The complaint states no cognizable claim arising from the $5.00 charge Plaintiff incurred for the issuance of his prison identification card (Doc. 1, p. 5). The only claim that might exist is a due process claim. However, Plaintiff has not alleged sufficient facts to suggest that any of the named defendants deprived him of due process in connection with this issue. To the contrary, the exhibits reveal that the card was issued based on Plaintiff's dramatically changed appearance (Doc. 1-1, p. 10). The complaint sets forth no allegation addressing, or challenging, this.

Moreover, none of the defendants were involved in issuing Plaintiff the card. Therefore, no claim against Defendants Gaetz, Wilson, and Godinez arises from Plaintiff's charge for this card.

Based on the foregoing discussion, the complaint states no due process claim against Defendants Gaetz, Wilson, or Godinez. Accordingly, **Count 3** shall be dismissed with prejudice.

**Count 4 – Denial of Meal**

Plaintiff's claim (**Count 4**) that the denial of one meal violated his constitutional rights is without merit. This claim relates to the conditions of Plaintiff's confinement. Relevant to the claim, the Eighth Amendment prohibits cruel and unusual punishment and is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

The complaint alleges that Plaintiff was denied a single meal as a result of his altercation with a correctional officer. The grievances filed with the complaint reveal that the altercation occurred on December 23, 2012, in part, because Plaintiff was late for a meal; he was denied lunch as punishment the same day (Doc. 1-1, pp. 31-35). The complaint does not suggest that this occurred more than once. The Court finds that this isolated incident does not rise to the level of a constitutional violation. Accordingly, **Count 4** shall be dismissed with prejudice.

## PENDING MOTION

Plaintiff filed a motion for recruitment of counsel (Doc. 3), which shall be held in **ABEYANCE** pending the Court's receipt of an amended complaint.

## DISPOSITION

**IT IS HEREBY ORDERED** that Plaintiff's complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support an access to courts claim **(Count 1)**, within 35 days of the entry of this order on or before **March 25, 2014**. Plaintiff is cautioned that in order to state a viable claim, he must identify the individual defendant(s) who were directly responsible for any alleged constitutional deprivations at Pinckneyville. Further, if Plaintiff includes in his amended complaint any of the claims that have been dismissed with prejudice in this order **(Counts 2, 3, or 4)**, the pleading may be stricken and this action may be dismissed.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Failure to file an amended complaint shall result in the dismissal of this action with prejudice. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A

review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**DATED: February 18, 2014**

*s/ J. Phil Gilbert*
**United States District Judge**